ENTERED ON DOCKET
3/1/00 PURSUANT
TO FRCP RULES 58 & 79a

# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF PUERTO RICO

JUAN ALBERTO COLON CABRERA,
et al.,
   Plaintiffs,

v.

UNITED STATES SMALL BUSINESS
ADMINISTRATION, et al.,
   Defendants.

Civil No. 97-1667 (HL)

## OPINION AND ORDER

Before the Court is plaintiffs' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiffs Juan Alberto Colón Cabrera, María Teresa López Beguiristain, and the conjugal partnership constituted by them ("the Cabreras"), are the owners and landlords of the real property which is the object of this lawsuit. Defendant United States Small Business Administration ("SBA") is the alleged assignee of tenant's mortgagee under the ground lease at issue. Plaintiffs filed a motion for summary judgment requesting that the Court: 1) find the SBA in default; 2) rescind the lease agreement; 3) order the cancellation of the registration of the property as to the original tenant; 4) order the cancellation of the mortgage registered in favor of the original creditor, Banco Santander de Puerto Rico; 5) order an audit of the rental sums still outstanding; and 6) grant plaintiffs all remedies they are entitled to based on the SBA's default. The SBA opposed plaintiffs' motion and made a cross-claim for rental payments based on plaintiffs'





AO 72A
(Rev.8/82)

Civil No. 97-1667 (HL)                                    2

refusal to accept rental payments from the SBA's alleged assignee, Aguigón, Inc. ("Aguigón"). For the following reasons, the Court grants plaintiffs' motion for summary judgment, and denies defendant's cross-motion.

## BACKGROUND

The dispute presently before the Court arises from the terms of a lease recorded in the property registry and executed by the Cabreras on April 16, 1993, in favor of Carib/Alliance Partners, Ltd. ("Carib"), for the establishment and operation of a restaurant called Grandy's. The lease provided for an initial 20 year term with progressively scaled monthly rental fees, and the right to extend the lease. As part of this transaction, Carib mortgaged the lease contract in favor of Banco Santander ("Santander") for $800,000.00, with 85% of that sum guaranteed by the SBA.

On February 10, 1995, the Cabreras notified Santander that the tenant, Carib, was in arrears, and that the contract would be rescinded. Santander requested and received payment of the guaranteed portion of the loan from the SBA. On March 3, 1995, the Cabreras filed an eviction proceeding against Carib before the Superior Court of Arecibo, which was converted into an action to revoke the lease contract. The court denied plaintiffs' action, holding that the SBA was entitled to intervene and remedy the

AO 72A
(Rev.8/82)

Civil No. 97-1667 (HL) 3

nonpayment of the rent.[1] Plaintiffs appealed, but the writ of certiorari was denied, the local Court of Appeals observing that the SBA validly paid the outstanding rent and assumed the duties of the tenant.[2]

On October 25, 1996, the SBA sent Juan Colón Cabreras a letter informing him that the SBA had executed a contract assigning the lease agreement to Aguigón, Inc. on that same day.[3] Co-plaintiff responded on November 8, 1996, stating that any assignment made without his consent constituted a violation of the lease under section 17, and would result in default and termination pursuant to section 20 if not cured.[4] The SBA countered by alleging that their prior letter had, in fact, merely been a request for plaintiffs' consent to the assignment, despite the fact that the assignment had actually already been consummated.[5] Plaintiffs responded on December 4, 1996, claiming that the SBA had already assigned the lease in clear violation of section 17, but notwithstanding, they would allow the SBA to repair the default by submitting a copy of their agreement with Aguigón, financial information about that company, and a ratification of the SBA's continued

---

[1] Plaintiffs' Motion for Summary Judgment (dkt. no. 38), Exhibit 5.

[2] Plaintiffs' Motion for Summary Judgment, Exhibit 6.

[3] This letter was included as Exhibit 7 of Plaintiffs' Motion for Summary Judgment, and the finalized lease assignment contract between the SBA and Aguigón was included as Exhibit 8.

[4] Plaintiffs' Motion for Summary Judgment, Exhibit 11.

[5] *Id.*, Exhibit 12.

Civil No. 97-1667 (HL)                                         4

responsibility under the lease if the assignment were approved.[6]  When they received no response, plaintiffs informed the SBA by a letter dated January 2, 1997, of the termination of the lease and demanded the return of the property effective March 5, 1997.[7] In response, the SBA alleged they would send the information about Aguigón, but assumed a new position that section 20.5 would permit their assignment without the Cabreras' permission.[8] While Aguigón apparently sent messengers to the Cabreras with monthly rental payments, these payments were not accepted.[9] In addition, the SBA did not restate their responsibility under the contract, nor were the Cabreras provided with financial information on Aguigón. The Cabreras brought this action to terminate the lease based on the SBA's default, and to obtain all appropriate remedies under the lease.

## DISCUSSION

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial responsibility of

---

[6] *Id.*, Exhibit 13.

[7] Plaintiffs' Motion for Summary Judgment, Exhibit 14.

[8] *Id.*, Exhibit 15.

[9] United States' Opposition to Plaintiffs' Request for Summary Judgment (dkt. no. 44), pg. 7.

Civil No. 97-1667 (HL)                    5

demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The opposing party must then designate specific facts that show that there is a genuine triable issue. Id. at 324, 106 S.Ct. at 2553; Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

I. The SBA's Assumption of the Lease

A determination of the SBA's obligations under the lease lies at the heart of this dispute. The SBA claims that it is not a tenant, nor is it bound by the terms which bound the original tenant, Carib. Instead, it claims to be a subrogee of mortgagee Santander, and somehow not bound by the terms of the lease. Plaintiffs contend that the SBA assumed the rights and obligations of the tenant when it cured the default represented by Carib's non-payment of rent in 1995.

An examination of the terms of the contract is integral to a determination of the parties' rights. Where the terms of the contract are clear and unambiguous as to the intent of the contracting parties, the literal sense of the terms shall be enforced. 31 L.P.R.A. § 3471. In section 13.2, the lease allows that the tenant may "enter into a Permitted Mortgage and the mortgagee or holders of the indebtedness secured by the leasehold

Civil No. 97-1667 (HL) 6

mortgage or trust deed . . . shall have the privilege of performing any of Tenant's covenants hereunder or of curing any default of Tenant hereunder or of exercising any election, option or privilege conferred upon Tenant by the terms of this Lease." Lease § 13.2(b). In addition, section 20.4 further provides that "[i]n the event of any default hereunder by Tenant, Landlord shall give notice to Tenant's mortgagee, if any, . . . so that it shall have an opportunity but not a duty to cure such default and **assume** Tenant's rights and responsibilities under this Lease." Lease § 20.4 (emphasis added). Consequently, despite the SBA's protestations, when it chose to exercise its opportunity to cure the default under section 20.4, it assumed the rights and obligations of the tenant under the lease.

In fact, in the SBA's Petition for Intervention in the initial case before the local court, the SBA itself claimed the right to intervene as the **assignee** of the lease signed by the parties.[10] And, although the SBA claims that anything contained in the local Court of Appeals' denial of certiorari is dicta, it is nevertheless informative that the court stated that "[t]he SBA paid the rent owed and assumed the duties and prerogatives Carib had."[11] The prerogative the SBA assumed, was the assumption of the tenant's rights and obligations.

---

[10] Plaintiffs' Motion for Summary Judgment, Exhibit 4, pg. 2. While the English translation of the document says that the SBA claimed it was the "assignor," in the original Spanish document, the SBA claimed it was the "cesionario," or the assignee. Apparently there was an error in the translation, and the Court will read the document with the original meaning.

[11] Plaintiffs' Motion for Summary Judgment, Exhibit 6, pg. 2.

Civil No. 97-1667 (HL) 7

In its sur-reply, the SBA contends that its own statutory framework does not allow it to assume the lease. The SBA points to language in 15 U.S.C.A. section 636(c)(2), which only provides for the assumption of the lease where the Administrator deems it is necessary in order to avoid default, and where the borrower agrees to make payments to the SBA.[12] The SBA claims that it could not have assumed the lease because neither of these conditions were met. The SBA further contends that federal law does not allow it to "run businesses of their own" by assuming the borrower's obligations.[13] However, section 636(c)(2) defeats this argument, as it clearly contemplates situations in which the SBA *may* assume the borrower's duties. The SBA's failure to satisfy its own internal procedures under section 636(c)(2) for the assumption of a tenant's duties under a lease does not excuse it from the contractual obligations it undertook by curing the default.

The SBA also contends that because it was not one of the original contracting parties, it should not be bound by the terms of the lease. While the Puerto Rico Civil Code provides that contracts shall only be valid between the parties who execute them, "[s]hould the contract contain any stipulation in favor of a third person, he may demand its fulfilment, provided he has given notice of his acceptance." 31 L.P.R.A. § 3374. Thus, nothing in the law prevents the parties from agreeing that the obligations contracted may be

---

[12] United States' Sur-reply (dkt. no. 55), pg. 7-8.

[13] *Id.* pg. 9.

Civil No. 97-1667 (HL)    8

assumed by those who intervene. *A. L. Arsuaga, Inc. v. La Hood Const., Inc.*, 90 P.R.R. 101 (1964). The intervenor's acceptance may be express or implied, through words or acts reflecting the will of that party to assume a juridicial nexus with the contracting parties. *Id.* Furthermore, where one of the parties expects to be benefitted by the contract, he must abide by the terms therein. *Alvarez & Bros. v. Alamo*, 37 P.R.R. 790 (1928).

It is apparent from the SBA's own exhibit to its Motion in Opposition to Plaintiffs' Motion for Summary Judgment, that the SBA was aware of the terms of the lease regarding a mortgagee's cure of the tenant's default, and subsequently agreed to abide by those terms when the SBA chose to intervene and pay the rent.[14] Thus, the SBA cannot escape the assumption of liability under the terms of the contract once it made the decision to cure the default.

## II. The SBA's Assignment of the Lease

By assuming the mortgagee's right to cure the tenant's default and assume the tenant's rights and obligations, the SBA is bound by all contractual limitations contained

---

[14] Even before the SBA chose to intervene, the SBA was aware of the particular terms of the lease, which information was provided in a letter from the tenant, stating that "[t]he Ground Lease authorizes the execution of the leasehold mortgage and provides the normal features to protect the leasehold mortgagee, such as notice of defaults and the right of the Mortgagee to cure any defaults, and for the mortgagee to take tenant's place in case of default. United States' Opposition to Plaintiffs' Request for Summary Judgment (dkt. no. 44), Exhibit IV.

Civil No. 97-1667 (HL)                                              9

therein. Thus, the SBA must abide by section 17, pertaining to assignments and subleases, which states that the "Tenant shall not assign this Lease or sublet the Premises or let the Building, in whole or in part, without obtaining Landlord's consent, which consent shall not be unreasonably withheld." § 17. By assigning the lease on October 25, 1996, to Aguigón without plaintiffs' prior consent, the SBA breached a covenant of the lease, thereby entitling plaintiffs to terminate the lease pursuant to section 20.[15]

After initially notifying the Cabreras of the completed assignment to Aguigón, the SBA then claimed that the letter was really just a *request* for permission to assign. When the Cabreras disagreed that the assignment had clearly already been consummated, and required additional information before they would consider allowing the SBA to cure, the SBA then assumed the belated position that it did not need the Cabreras' permission after all. The SBA based this conclusion on section 20.5 of the lease, which provides:

> Notwithstanding anything contained herein Landlord agrees that **if for any reason this Lease is terminated**, whether by Landlord or Tenant, landlord shall give written notice to Tenant's mortgagee, so that it shall have thirty (30) days within which to elect to cure any default under this Lease and assume all of Tenant's rights, title, interest and obligations under this lease, whereupon Tenant will be released from all obligations and liabilities under this Lease. In the event Tenant's mortgagee so cures and assumes it may sublet the Premises to any party of its choice, provided that Tenant's mortgagee and its sublessee shall be and remain

---

[15] Section 20 of the lease provides: Landlord may, at its sole option, terminate this Lease by sixty (60) days prior notice to Tenant and to Tenant's mortgagee, if any, upon the happening of any one or more of the following events of default, if the same are not remedied within forty-five (45) days after written notice thereof." Section 20(f) establishes that tenant's failure to fulfill any of the covenants of the lease would constitute default.

Civil No. 97-1667 (HL) 10

> jointly and severally, primarily and unconditionally liable and responsible to Landlord for all obligations under this Lease.

Lease § 20.5 (emphasis added). As is apparent from the emphasized language in the text, this section is only controlling if the mortgagee cures the tenant's default **after termination** of the lease.

In a prior proceeding initiated to evict tenant Carib, the Superior Court held that under the terms of the lease the lessor could not rescind the contract before sixty days from the time of notice. Since the SBA deposited the rent in arrears after fifty-six days had elapsed from the date of notice, the SBA managed to cure *before* the Cabreras could terminate the contract.[16] While implicitly recognizing that the lease had not been terminated, the Superior Court nevertheless mistakenly stated that the SBA cured pursuant to section 20.5, which provides for the mortgagee to cure *after* termination of the lease, rather than the correct section 20.4, which permits a mortgagee to cure after default but *before* termination.

On appeal, the local Court of Appeals denied the writ for certiorari which sought recission of the contract, since they decided to uphold the decision below "as substantially correct."[17] The appellate court found that the Superior Court had correctly concluded that the SBA was permitted to cure the default and assume the lease, but had mistakenly relied

---

[16] *Id.*, Exhibit 5.

[17] Plaintiffs' Motion for Summary Judgment, Exhibit 6, pg. 7.

Civil No. 97-1667 (HL) 11

on section 20.5. In order to apply section 20.5, the court observed that the contract must already have been terminated, an event which had not yet taken place.[18]

While the SBA repeatedly acknowledges that the appellate court found that the contract had not been terminated, they assert that that finding is only dicta, since it was stated in a denial for a writ of certiorari.[19] This issue is clearly a matter of law, and may be resolved by this Court in the present motion for summary judgment. Since it is clear from the Superior Court's own decision that the contract had not been terminated, and in light of the local Court of Appeals' similar observation, this Court will only consider as binding the Superior Court's conclusion that the SBA cured the default before termination of the contract. The Superior Court's clearly erroneous and internally inconsistent reliance on section 20.5 rather than 20.4 was immaterial in the case before that court, but is of the utmost importance in the present case, and thus will not be relied upon in the interest of justice. Consequently, the SBA's belated reliance on section 20.5 is misplaced since it cured pursuant to section 20.4.

In *Ganderia Esperanza, Inc. v. Vda. de Castañer*, 108 P.R. Off. Trans. 417 (1979), the Puerto Rico Supreme Court was faced with a similar situation in which the lessee sublet the lease in violation of an express clause which prohibited assignment or subletting

---

[18] *Id.* at pg. 5.

[19] United States' Sur-reply (dkt. no. 55), pg. 5.

Civil No. 97-1667 (HL)                    12

without the landlord's prior approval. The court found that, "the lessee that, in violation of the agreement, sublets without the owner's permission, breaches a fundamental condition of the agreement and allows the owner to terminate the lease contract." *Id.* at 421. Thus, the court found that the owner was justified in relying on the provision in the contract which provided for the termination of the contract if the lessee failed to comply with the terms of the lease. *Id.*

Likewise, in the case at hand, the SBA violated an express covenant of the contract not to assign or sublet without the prior approval of the landlord. The Cabreras acted within their rights under the contract when they first notified the SBA that they were in default on November 8, 1996, and then followed that letter on January 2, 1997, with notice of the termination of the contract and their request for the return of the property effective March 5, 1997.[20]

In its sur-reply, the SBA claims that it "offered a tenant, Aguigón, Inc. to occupy the premises, but the lessors rejected the same and terminated the contract."[21] The SBA makes a cross-motion for summary judgment based on its contention that "plaintiffs breached the contract by their undue interference in rejecting the tenant [Aguigón], and hence, are liable to the SBA for all damages caused." Pursuant to the analysis above, the SBA needed to

---

[20] Plaintiffs' Motion for Summary Judgment, Exhibits 11 & 14.

[21] United States' Sur-reply (dkt. no. 55), pg. 9.

Civil No. 97-1667 (HL)                              13

obtain the Cabreras' permission *before* it assigned the lease. Since the SBA consummated the assignment to Aguigón on the same day it sent a letter to the Cabreras informing them of the completed assignment, the SBA was in default. Once the SBA violated the contract, the Cabreras had no obligation to accept the assignment, and had every right to terminate the contract. *Gandería*, 108 P.R. Off. Trans. at 421. Since the SBA's default justified the Cabreras' termination of the contract, the SBA may not rely on the terms of that contract to force the Cabreras' continued compliance, or to request damages for the Cabreras' decision to exercise their right to terminate the lease.

### III. The SBA's Counter Claims

Plaintiff also moves for summary judgment dismissing the SBA's counterclaim for damages. The SBA bases their argument on damages incurred because plaintiffs "invalidly contend[ed] that under clause Seventeen of the ground lease contract SBA had to obtain the landlord's prior consent for said assignment." Thus, the SBA claims it has suffered damages in the amount of $1,061,807.05, which is the amount outstanding in the loan which the SBA guaranteed, plus $49,400.00 of rental payments made as of January 1997. However, plaintiffs correctly point out that since it was the SBA's actions which first breached the contract and put it in default, the Cabreras were within their rights in rejecting the assignment to Aguigón and rescinding the contract, and the SBA may not claim damages arising from those acts. *Mora Development v. Sandín*, 118 D.P.R. 733, 742

Civil No. 97-1667 (HL)                 14

(1987) (if a party who breaches a contract demands compliance with an obligation under the agreement, the other party may raise breach of contract as a defense).[22] Consequently, any damages arising from the termination are denied.

In addition, the SBA claims damages for vandalism done to the premises which took place in 1995 during the prior proceeding before the Superior Court to terminate the lease. The SBA holds a $200,000.00 chattel mortgage entered into by the prior tenant, and secured by the damaged property. The SBA contends that the Cabreras should have insured the property, and thus are liable for the damage. However, from the terms of the lease, the owners are under no duty to hold insurance. Rather, that is the obligation of the tenant.[23] Consequently, the Cabreras are not liable for damage to the property.

WHEREFORE, the Court hereby **grants** plaintiff Cabreras' Motion for Summary Judgment (Dkt. no. 38), and **denies** defendant SBA's counter-claims for the outstanding amount of the loan which the SBA guaranteed to a third party, and for $200,000 to cover damaged property which secured a chattel mortgage . Accordingly, the Court: 1) finds that the SBA breached the lease agreement; 2) orders that the lease agreement be rescinded; 3)

---

[22] It is unclear if the SBA is attempting to hold the Cabreras liable for the loan the SBA secured which was made by Santander to the prior tenant. Regardless, it is clear from the terms of the loan that the Cabreras were not a party to the mortgage, and are thus not liable. The SBA's Counterclaim (addendum to the SBA's Answer to the Complaint, dkt. no. 16), Exhibits A & B.

[23] "Tenant, its contractors and subcontractors shall contract, pay for and deliver to Landlord policies or certificates of insurance. . . ." Lease § 12.7. (Dkt. no. 38, Exhibit 2).

Civil No. 97-1667 (HL)                                    15

orders the cancellation of the registration of the property as to the original tenant; 4) orders the cancellation of the mortgage registered in favor of the original creditor, Banco Santander de Puerto Rico;[24] and 5) orders the SBA to pay all past-due rent from January 1997 to July 1998 (the start of the fifth year under the agreement, which was pre-paid), with interest. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, February 29, 2000.

HECTOR M. LAFFITTE

Chief U.S. District Judge.

---

[24] Mortgages are accessory security contracts, and as such, depend on the life of the main obligation. Where the main obligation is extinguished, assigned or annulled, the mortgage is accordingly extinguished, assigned or annulled. *Liechty v. Descartes Sauri*, 109 D.P.R. 496 (1980). Consequently, upon the rescission of the lease, the mortgage must be cancelled.

AO 72A
(Rev.8/82)